20-1175 Veterans4You v. United States. We are now ready, Ms. Rada. Thank you, Your Honor. May it please the Court, my name is Sarah Rada and I represent Veterans4You LLC, the plaintiff's appellate in this appeal which requests the reversal of the final judgment entered on September 25th, 2019 by the United States Court of Federal Claims. This case arose as a big protest action challenging the invocation of the printing mandate. Throughout the Veterans Affair Procurement for imprinted veterans suicide prevention gun locks to include two keys imprinted wallet cards to the government publishing office or GPO. This appeal involves two primary issues which relates to interpretation and interaction of two statutes, the printing mandate of 44 U.S.C. 501 and the Veterans Benefits Act of 38 U.S.C. 8127 at sequence. First, the Court of Federal Claims improperly held that the printing mandate which is a broad sweeping decision that opens the door for any acquisition with a minor element of printing to be conducted via the GPO. Second, the Court of Federal Claims erroneously concluded that because the solicitation was conducted by the GPO rather than the VA, the VA was not required to conduct a rule of two analysis under 38 U.S.C. 8127D and was instead subject only to 38 U.S.C. 8127I which requires it to include VBA compliance language in its acquisition request despite full knowledge it would have no force or effect in this particular instance. I'll turn first to the printing argument. Now first, the Court erroneously found that the GPO was properly conducting the solicitation because the printing mandate was invoked. This is an error. This is that fourth bully in Veterans for You's brief, the gun lock thought to be seeking to acquire a gun lock. However, because there was a minor element of printing involved. Ms. Rada, this is Judge Chen. I was wondering what is your view on what an executive agency like the VA here should do when it's trying to get a kind of good kind of product that it's mixed in terms of there's some printing involved and then there's some product involved and that's you know in a broad sense what we have here. We have a mixture of printing as well as product. How should an executive branch agency go about trying to decide in that kind of broad category of things whether it should go over to the central today's scale at hand because what we're looking at here is a product that is fairly common compared to other products that a government agency could seek to obtain. So for example, if you have a fire extinguisher which would also come with instructions and the printing on the fire extinguisher itself obviously that includes a mix of both printing elements and that the items thought to be obtained. I think that the central inquiry at hand should be what that end product is as a whole. What that product is supposed to be doing because when it comes down to it really any supplies thought to be obtained by any executive agency would be considered as having a mix of both printing components and a supply and the end item should be what is considered determining whether or not the printing mandate applies. Now with respect to the kind of supply that you allude to in your question your honor where you have printing components that can be categorized as different from the non-printing components there is nothing that would prevent an agency from deciding to procure the item separately. In this particular case the VA made the conclusory statement that because of prior issues with obtaining separately they were going to have the GPO obtain everything at the same time. However there is nothing in the record to indicate a what that prior difficulty was or be why there would have been such an issue with the VA obtaining all the products the product as a whole itself. Another important interaction here is looking at the interplay of the federal acquisition regulation with the printing procurement regulation. Now as we know because the GPO is subject to the legislative branch requirements it is applied and it is only subject to the printing procurement regulation and that makes an important impact on these kinds of acquisitions decisions because when you are when you're obtaining a product it has both printing elements and non-printing elements such as and I give the example of life-saving products such as oxygen masks, fire extinguishers because not only are these particularly important but because they're similar to the gum lock in the sense that the the printed element is particularly important because you need to know how to function to use it. If these were to go through the printing office the result is that the federal acquisition regulation and its robust requirements and provisions would not apply so you would not have the Buy American Act applied to these acquisitions you would not have the Trade Agreements Act and the other regulations that apply via the FAR. So when you're looking at an acquisition that includes both the printing elements and a non-printing element first of all the overarching purpose and end item should be what is considered when determining which agencies should be procuring the item and then second if there is a possibility of obtaining them separately then that is something that the agencies would be allowed to consider. I'm keeping in mind the integrity of the item sought. Ms. Wright, this is Judge Clevenger. I've lost sight of exactly what it is you want us to write to get you a different result. You've argued that the great value of the product here is in the hardware and not in the printing that this is basically a hardware contract. How are we supposed to deal with the mandate? The mandate, your honor, requires that printing and printing services should be obtained through the GPO. Okay, well stop right there. Did this contract require any other product? The answer is yes. And so would that necessarily constitute printing under the mandate? No, it would not, your honor. And without discounting the importance of this. Tell me why not. Because the message is not what is being thought to be procured. What is being thought to be procured is the gun locks. Okay, stop right there. That goes to the identification of the NICS code, correct? That is a relevant inquiry, but that's not really what it goes to. I mean, the contracting officer under 13 CFR 121402, the contracting officer of the procuring agency here, GPO, is required to designate the NICS. Yes, that's true. Is that correct? Yes, the contracting officer. And the same regulation says you're supposed to pick the NICS code that fits the relative value and importance of the Right. So what happened here was the GPO made a mistake and picked the wrong code. In that sense, your honor, but you also have the instance of the tail wagging the dog. Let me just follow it through because you actually protested the GPO selection of the printing NICS code. Yes, your honor. You lost on the ground that the Small Business Administration has no jurisdiction over what the GPO does. Yes, your honor. So how do you want us to correct? How do we correct the misdiagnosis of the NICS issue as a matter of law? Well, as mentioned earlier, your honor, this is a case of the tail wagging the dog because the VA had categorized this as printing and really acknowledged there was an element of printing and therefore the requisition goes to the GPO. The GPO said there's an element of printing. There was no analysis as to whether this was in fact a printing acquisition. They just noted there was some printing involved. This goes to the GPO. Once the VA did that and took it out of the executive agency and put the acquisition to the GPO, it became no longer subject to the Small Business Act and the GPO as a legislative branch only had, I believe it was four or five NICS codes to choose from under printing because it is a GPO. It is tasked with printing services. So it did not do an analysis as to whether or not that NICS code was probably applied. Are you saying the court of federal claims erred as a matter of law in not correcting the NICS designation? I believe that, yes it did, but I believe that the more important inquiry is that the NICS code is an illustration in terms of how you properly categorize any particular acquisition. And the NICS code, as you mentioned, your honor, is dependent on, in large part, what the ultimate cost is of the item. What is the biggest component cost-wise? And in this particular instance, or not in this instance but in any instance, once an acquisition goes to the government printing office, the government printing office is governed only by the printing procurement regulations and it only assists with acquisitions of printing and printed related supplies with limited and only being able to choose among printing NICS codes. What should have happened here is that when the VA had initially identified the need for gun locks, including a printed element, is it should have looked at the acquisition and determined whether or not it was printing. If it was not printing, if ultimately the item sought to be obtained was a gun lock, then it never should have gone to the GPO in the first place. In this particular instance, the court of federal claims... Could I ask one more question? Yes, your honor, of course. If you don't mind, Judge Cleavage. Your amicus curiae says that for this case, for the GPO mandate, two questions that have to be asked. First, is printing involved? And secondly, if printing is involved, what is it that's being printed? What is the subject matter of what's being printed? The amicus curiae says that just because it's printed matter, in this case, the label and the wraparound, that doesn't end the inquiry. You have to ask, what's the nature of what's being printed? And the amicus curiae is suggesting that the printing mandate is limited as a matter of printed matter only to documentary type publications that are relevant to the internal workings of the agency. That's how I read their argument. Do you embrace that argument? What do I understand is the response to your amicus? With respect to the amicus curiae's argument, I mean, it's important to look at the Appropriations Act of 1993 and the definition that is provided there. I believe I'm out of time, your honor, but I can take the question. Please answer the question. Please answer the question, Ms. Rubita. Yes. I mean, I believe that in determining whether or not the printing mandate is triggered, I do believe that there is merit to the argument as presented in the brief, because you need to be looking at the definitional requirements of what is printing under the Legislation Appropriations Act of 1993. There are very specific categories that are defined under that act in terms of what would fall under being printing or printed-related services. In order to merely identify any appropriation that includes an element of printing as automatically invoking the printing mandate opens the Pandora's box, which is exactly what has happened in this broad-speaking decision by the Court of Federal Claims. We're asking the Circuit Court to close the lid by providing more of a bright-line rule and a categorization of what would be printing, or otherwise, literally, any appropriation, including an element of printing, would be found to fall under the printing mandate. Thank you, your honor. Thank you, counsel. We'll save time for you. Could I ask one more question? I'd like to ask one more question of Ms. Rada, so in case the government responds to what I'm saying. Ms. Rada, under 38 U.S.C. 8127I, the Department is free to go to any government entity to add the government entity's supply and contract need. Isn't that correct? In a sense, I think that we also have to look at that in the context of the statute as a whole. 8127I is saying that when the VA is acquiring supplies or services through another agency, it must ensure that that contract adheres to the VBA, at the heart of which, of course, is the rule of two, to the maximum extent feasible. It is true that 8127I provides the VA with the opportunity to acquire through another agency. Just stop right there. Why wouldn't it have been possible for the VA in this case to go to the GPO wholly without regard to the printing mandate? Why couldn't the VA simply choose under 8127I to have this contract performed by the GPO? If that was the situation, then both 8127I would be rendered meaningless because the VA would have full knowledge that the GPO not only has no set of five procedures, but it has no means of providing any kind of evaluation credit for socioeconomic categories or a preference. Also, when it would acquire via the SF-1, which is the form when asking for an acquisition to be conducted through a GPO, it would have language relating to 8127I saying comply to the VBA to the fullest extent possible while knowing that that language would have no force in effect. There would be no purpose the VA making the request at all because the GPO literally could do nothing in order to protect the veteran's set-aside preference that the VA is bound to protect. Thank you, counsel. Let's hear from appellee, Mr. Adelschick. Good morning, and may it please the court. The court should affirm because this procurement of suicide prevention materials complied with all statutes and regulations and have a rational basis. Veterans for Use appeal focuses on some superficial tension between the Rule of 2 in Section 8127D of Title 38 and the printing mandate in Section 501 of Title 44. However, Congress has resolved this tension by promulgating or passing Section 8127I, which loosens the Rule of 2 to a guideline in situations where another agency is conducting a procurement for the VA. So this case really turns on whether the printing mandate applies and whether the VA followed Section 8127I. Now, Veterans for You and the amicus argue that the printing mandate doesn't apply here despite the fact that there's obvious printing involved in this procurement because they argue that the printing message is combined with a functional object. But there's no support for this argument in the text of Section 501 or the Joint Committee on Printing's regulations. Here, the VA is not buying goods or gun locks for consumption by the VA. It's publishing a message to veterans. This procurement was for a package of suicide prevention messages, an important message on a printed wallet card, a printed message on a gun lock, and the gun lock itself. And the VA sought to publish this package of... Mr. Edelcheck, this is Judge Shen. I understand the purpose behind the procurement and it's designed to help veterans and save veterans potentially from doing harm to themselves. But what if we disagree with you as to what the overall character is of the product that's being procured here? And what if we see it as a... There's a functional device here which happens to have some printing that goes along with it. The printing is important and just like any other element of the contract solicitation, it's an essential element, but they're all essential elements. And nevertheless, we see something wrong here in saying that this is somehow a printing-dominant type of product. And in fact, to look at this would just plainly be the tail wagging the dog, so to speak. And so, we see the lock as the main event of the goods being procured. Do you think the printing mandate still applies? Well, Your Honor, the problem with that approach is that we're not writing here on a clean slate. The Joint Committee on Printing could have adopted a regulation that evaluates the extent of the printing based on relative cost or weight or size of the printing versus the non-printing elements. But there's no such regulation. And instead, the Joint Committee on Printing has promulgated a regulation that establishes a patchwork of exceptions. Most significant here... Which regulation are we talking about? The Joint Committee on Printing's regulations, which are called... Pardon me? Yes. I'm just trying to look for something that I can read and follow you, which tells me... Yes. I want to read something that commands that the printing mandate is very, very broad and includes situations where the printing is perhaps a more ancillary element of the overall good that's being procured. Yes, indeed. So, I'm referencing the government printing and binding regulations that were published by the Joint Committee on Printing. Is there something in the joint appendix that I can read? I'm sorry. There were two judges asking questions. Let me try again. Is there something in the joint appendix that I can read so I can see what you're saying? Your Honor, those regulations are... I do not believe are republished in the joint appendix in their entirety, but I can refer, Your Honor... We have in our brief the reference to the available online, and I can tell Your Honors that there are exceptions. For example, in section 49-2 of the Joint Committee on Printing's regulations, it says that procurements that have printing under $500 per line item are not subject to the mandate. So, there's essentially a de minimis exception. If you're doing a procurement and there's a tiny printing component that's less than $500 in the Joint Committee on Printing, their regulations establish that that does not have to go through the GPO. The argument by the amicus and Veterans for you is that the court should disregard the exceptions, such as the one I identified, that the Joint Committee on Printing, the entity charged with establishing regulations in this area has made, and instead establish a new judicial test to regulate procurements that involve both printing and non-printing elements. The problem is this is not consistent either with the regulations in effect or the standard of review. It is Veterans for you's burden in this bid protest to demonstrate a clear violation of law, and there is none. Where in your red brief is this reference to any of these joint committee rules? One moment, Your Honor. I mean, this sounds like your lead argument, and I don't know where it is in your brief. Your Honor, we cite to the Joint Committee on Printing regulations in our brief, but not this particular provision that I cited in answering Your Honor's question. On page 35 of our brief, and we cite on page 35 in footnote 11, it says the regulations are available online. It gives the website link. So, in answering Your Honor's... I'm sorry? Mr. Edelstein, Judge Klobuchar, can I ask a question on a little different topic, please? Let's assume for purposes of argument that we are going to entertain a constitutional challenge to the GPO mandate. Assume that even though the issue wasn't raised below, we decide it's sufficiently a brief and understood that we are going to decide that question. And secondly, assume we are going to reject your argument that the FAR provisions in the FAR make it unnecessary to deal with the constitutional issue. So, my question to you is, if the constitutional issue is squarely in front of us, and there is no way to avoid it, what is the answer? Is the GPO mandate unconstitutional, yes or no? Your Honor, the OLC opinion on this subject indicates that if we are looking in isolation at the printing mandate without regard for FAR 8.802, the OLC opinion says that violates our system of separation of powers, and the OLC opinion is the position of the Department of Justice. However, as Your Honor's question indicated... Your hope would be that the FAR issue obviates the need to do that, unless you say we reject it. I'm saying we reject it. So, you, the position of the government would be that the mandate is unconstitutional? That would end this case, correct? No, Your Honor, because... And this dovetails right back into why the court need not even reach the issue. The VA felt constrained to follow FAR 8.802 in this procurement. That was binding on the entire executive branch, and was essentially, you know, whatever tension exists between the printing mandate and the separation of powers principles, the executive branch resolved that tension by choosing to follow the printing mandate in FAR 8.802, and the VA was bound to follow FAR 8.802 in this situation. That doesn't mean that that obviates... If we say that the mandate is unconstitutional, that's for the future. In this particular case, the contract's already been performed, correct? That is correct, Your Honor. So, all that's left here is an EJIA claim for attorney's fees? No, Your Honor, because the protester cannot prevail on the merits because the government complied with FAR 8.802... Acting unconstitutional, violating the constitution. The government complied with an unconstitutional mandate. Well, now, Your Honor, I wouldn't put it that way. Why not? Why not? Well, Your Honor, the legislative branch enacted Section 501 with the printing mandate, so that was the instruction to the executive branch. The executive branch, with full knowledge and consideration of the OLC opinion, notwithstanding that, decided that they wanted to do that which the printing mandate would require in promulgating FAR 8.802. So, that is a separate source of positive authority that required the agency... So, if Congress passed the law that's in connection with a particular presidential election, only certain votes would be counted, and then the executive branch cooperated in making that happen, it would all be okay. Congress can pass a law ordering an executive branch to commit a constitutional violation, and there's no harm? Well, Your Honor, I think your question is suggesting that the printing mandate itself, that there's something unconstitutional about it, separate and apart from the fact that it is the legislative branch ordering the executive branch to do its printing in a certain way. And here, while there is certainly a fascinating question addressed in the OLC opinion about whether and to what extent the legislative branch can order the executive branch to perform its printing through the legislative branch, we don't even need to reach that issue because... I've used up too much of the time on these points. Let me just make one other footnote to this, and then we can go on. If we were to decide to greet the constitutional question and to find that your reliance on the FAR was inadequate or inappropriate, then you've said, in essence, the thing would be unconstitutional. That raises a serious enough question, would we be appropriate in using the doctrine of constitutional avoidance to interpret the mandate in such a way as to preserve its constitutionality? I believe that the doctrine of constitutionality... Let me rephrase that. Use the canon in such a way as to have the constitutional issue disappear from this case. The constitutional issue, we respectfully submit, Your Honor, should disappear from this case under the doctrine of constitutional avoidance, even if putting the waiver issue aside, the constitutional avoidance doctrine would counsel this court to not have to reach the issue of a constitutional dimension because the constitutional issue is whether the legislature can order the executive branch to follow the printing mandate. And here, the executive branch chose to follow the printing mandate, thus obviating the need for any resolution of the constitutional question. Mr. Adelscheck, I've got a couple of questions. One is, is it still nevertheless a separation of powers defect to have the executive branch ask the legislative branch to carry out executive functions? Your Honor, I don't believe that that is the source of concern in the OLC opinion. I know, but I'm asking you a question nevertheless. I mean, my understanding is the legislative branch has the powers under the Constitution to exercise legislative powers. And likewise, for the executive branch, they're supposed to stay in their lane and exercise executive powers. And it seems a little peculiar if now we break down those clear boundaries and start having different branches asking other branches to do their own constitutional functions. Your Honor, we just don't see a problem of a constitutional dimension in this case. Really, this case should, in our view, it should turn on whether the printing mandate applies and whether the VA followed 8127 subsection I. Okay. Well, then getting back to the printing mandate and Judge Clevenger's questions about constitutional avoidance, let's say there is a way to read the printing mandate when it talks about printing and binding and blank bookmaking as in that context, understanding printing as really being about printed documents and other printing related goods when the term printing is associated with things like binding and blank bookmaking. And so therefore, to avoid problems that are of a constitutional dimension, we read the term printing narrowly and consistent with the neighboring terms in the statute of binding and blank bookmaking. And so therefore, likewise, your regulation of 8.802, which does nothing more than follow the printing mandate, likewise, has a narrow conception of how it uses the term printing in that regulation. And therefore, we come to a result where the printing mandate is at least narrowly understood and therefore would likely not cover functional goods like this. And likewise, your regulation 8.802 would also be likewise narrowly read. A couple of answers to Your Honor's question. First, constitutional avoidance, I think, can be resolved with reference to FAR 8.802. So you don't need to construe the statute in order to cure the or to avoid the constitution. But I guess my concern with that, Mr. Edelsheik, is that the regulation follows the statute. And so we have to understand the statute before we can understand the regulation. Right, that's right. So the second level, second response to Your Honor's question is to somehow construe printing as not printing for purposes of this case is an untenable reading of the statute. And the only constitutional question is whether Congress could order the executive branch to do this in this fashion. The executive branch has chosen to do it in this fashion because of the FAR. So there really is no constitutional issue. But in terms of the statutory language itself, there are three separate things listed in printing, bookbinding, blank book making. Those are three separate things. And there's no serious question that this procurement involved a large amount of printing work. You know, the Joint Committee on Printing... Well, maybe there is a serious question about that in relation to everything else that's going on in terms of making a padlock and cables, etc. Well, Your Honor, there is no question that the largest part... This was roughly a $400,000 procurement. The largest part of the procurement was the gunlocks. However, there's still somewhere north of $50,000 worth of printing work involved in this procurement. That is not de minimis. And the Joint Committee on Printing has established that the threshold is $500 per line item for whether the printing mandate applies. Thank you. Thank you, counsel. I think we have your argument. Could I ask one question before we close, Judge Clevenger? I was interested in your brief, sir. At page 34, you make what I take to be your only response to the amicus's theory about kind of printed matter is covered by the mandate. And you simply dispose of it on the ground that the examples they use are not what's in this case. Do you have any other argument to raise against the amicus's view that it isn't enough just to be printing, it has to be printing of a documentary or governmental publication nature? Your Honor, I think this area defies bright line rules, but... That wasn't my question. My question to you is the amicus made an ordered argument of statutory interpretation based on history and long course of conduct. And the question is whether or not that interpretation would suffice. And your only response is at page 34. Your Honor, I think... I'm not giving you an opportunity to have another argument against the amicus's theory. Sure, Your Honor. Sure. So the amicus is essentially asking the court to graft a new judicial regulation on procurements that involve printing and non-printing elements and to establish some sort of bright line rule where the joint committee on printing decided not to draw one. And so I would just respectfully submit, Your Honor, that their interpretation is an invitation for the court to re-regulate in an area that has already been regulated. Thank you, counsel. Ms. Rader has some rebuttals on. Thank you, Your Honor. I just wanted to address a few of the points that were made in the government's argument. The first relates to the constitutionality. As an initial matter, it is not, as Your Honors have pointed out, something that one branch of government can consent to, a violation of the separation of powers. If there is a violation to the separation of powers, then there is a violation to the separation of powers. And anything promulgated in FAR 8.802 is irrelevant. Also, under the doctrine of constitutional avoidance, any court has an obligation to interpret a statute to avoid any constitutionality problem. As has been reiterated several times in the government's argument, the printing mandate is broad-sweeping, and it should have a broad application. However, this presents the exact problem that is supposed to be obviated by the doctrine of constitutional avoidance. By having literally any procurement that includes some elements of printing subject to the printing mandate creates a constitutionality problem. And this particular acquisition is very problematic considering that what is being obtained is a gun lock to prevent the suicide of veterans. And in order to have this fall under the printing mandate and to take away this acquisition from the VA and from the executive agencies and the robust provisions of the Federal Acquisition Regulation would create numerous problems, not only with constitutionality, but also with protecting the integrity of the supply sought to be procured. So on the constitutionality argument alone, this protest, or not this protest, this appeal should be granted and the decision of the Court of Federal Claims should be reversed. Also, as a note with regards to waiver, one particular issue that was created by the Court of Federal Claims was the broad-sweeping nature. There are many reasons for considering the constitutionality issue here, but in particular, by the Court of Federal Claims having such a broad ruling in the application of the printing mandate, any time that any element of printing is involved in an acquisition would result in not only virtually any acquisition from an executive agency to be subject to the printing mandate and to go to the GPO, but it would also consistently create a constitutionality issue going forward. The other point I wanted to make related to the government's allusion to a superficial conflict between the printing mandate and 8128I, this is not a superficial conflict. In effect, this is a complete conflict because what is going to happen is if the VA is allowed to procure through the GPO, what is going to happen is it renders the VBA meaningless because there is absolutely no mechanism by which the GPO can protect the spirit of the Veterans Benefit Act and for the rule of 2. And so for these reasons, we respectfully request the Court to reverse the ruling of the Court of Federal Claims. Thank you. Thank you, counsel. We will take the case under advisement.